CITY OF BEAUMONT v. MASTERSON.†

(Court of Civil Appeals of Texas. Galveston. Jan. 31, 1912. Rehearing Denied Feb. 29, 1912.)

1. APPEAL AND ERROR (§ 1010*)—FINDINGS—CONCLUSIVENESS.

A finding, reasonably supported by the evidence, is conclusive on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982; Dec. Dig. § 1010.*]

2. MUNICIPAL CORPORATIONS (§ 374*) — IMPROVEMENTS—CONTRACTS—PERFORMANCE.

Evidence *held* to justify a finding that money reserved by a city employing a contractor for public work was a portion of that earned by and due to a third person contracting with the city to complete the work on the failure of the contractor to do so, so that such money was not subject to the claims of persons furnishing materials for the contractor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. § 374.*]

3. JUDGMENT (§ 668*)—CONCLUSIVENESS.

A city contracting for public work made a new contract with a third person to finish the work on the original contractor failing to do so. A materialman of the original contractor obtained judgment against the city and the third person for materials. The city did not appeal, but paid the judgment. The judgment, on the appeal of the third person, was reversed, so far as it affected the money accruing for work done by him, and he thereafter obtained a judgment against the city therefor. *Held*, that the city, on appeal from the latter judgment, could not complain of the enforcement of the judgment in favor of the materialman.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1181–1183; Dec. Dig. § 668.*]

4. JUDGMENT (§ 883*)—SET-OFF AGAINST OTHER CLAIMS.

The city, in such case, was not entitled to set off the amount of the judgment in favor of the materialman against the claim of the subsequent contractor.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1669–1688; Dec. Dig. § 883.*]

5. APPEAL AND ERROR (§ 1036*)—HARMLESS ERROR—ERRONEOUS RULING AS TO PARTIES.

Where, in a suit by a third person contracting with a city to complete public work on the abandonment of the work by the original contractor, the court struck out the intervention of a materialman furnishing materials to the original contractor for construction of the work, and the materialman did not appeal, the city, appealing from a judgment against it in favor of the third person, could not complain of the ruling on the intervention, in the absence of facts showing any liability on the part of the city to pay the materialman's claim, which was barred by limitations.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4069–4074; Dec. Dig. § 1036.*]

Error from District Court, Jefferson County; W. H. Pope, Judge.

Action by the Beaumont Brick Company and others against the City of Beaumont and H. Masterson and others. From a judgment for defendant Masterson against defendant City of Beaumont, it brings error. Affirmed.

A. Ludlow Calhoun and Crook, Lord & Lawhon, for plaintiff in error. Masterson & Masterson, for defendant in error.

McMEANS, J. This is a second appeal of this case. See Ross et al. v. Beaumont Brick Company, 53 Tex. Civ. App. 469, 116 S. W. 643. The only facts necessary to be here stated, in order to understand the issues involved in this appeal, are the following:

On May 23, 1903, H. W. Downey & Co., a firm composed of H. W. Downey and George B. Kelley, entered into two contracts with the city of Beaumont, one for the construction of sewers, and the other for paving certain streets, wherein it was agreed that Downey & Co. should be paid for the work, as it progressed, upon estimates made by the city engineer, 15 per cent. of the amount due upon each estimate to be retained by the city to insure final completion in accordance with the specifications, and, upon final settlement, a sufficient amount should be reserved by the city out of any balance due on the contract to pay any outstanding claims against the contractor for labor or materials used in the work. On June 1, 1903, H. Masterson entered into a contract with Downey & Co., the exact nature of which need not be stated, further than to say that by its terms it was agreed that Masterson should receive certain profits growing out of the execution of the contract, and that the effect of said contract was to make Masterson a partner in the firm of Downey & Co. in the execution of said contracts. On or before September 30, 1903, Downey & Co. purchased certain brick from the Beaumont Brick Company, which were used in the construction of the work, upon which, after certain credits were applied, Downey & Co. owed to the Brick Company $838.49. Prior

to October 3, 1903, Downey & Co. purchased certain brick from the J. R. Land Brick Company, to be used in the construction of said work, amounting in value to $1,248.

Subsequently to these purchases, Downey & Co. assigned their contract with the city to H. Masterson, who thereupon entered into a new contract with the city, by the terms of which he agreed to complete the work undertaken by Downey & Co. in accordance with their contract; and it was further stipulated that the "party of the second part [Masterson] agrees and binds himself to complete in all its parts, the sewerage contract entered into between the city of Beaumont and H. W. Downey & Company, upon the same terms and within the same time and for the same price as provided in said contract, and the party of the first part [city] agrees and binds itself to pay to the party of the second part for said work, the price stipulated in the bid of H. W. Downey & Company and at the time and in the manner provided in the specifications for said work attached to said contracts; all the terms, conditions and stipulations in said contract to be binding upon the parties hereto." After certain work was completed by Masterson under his contract, he was released by the city from further performance. Pending final settlement, the Beaumont Brick Company and the Land Brick Company appeared before the city council, and requested that a sufficient sum of money be withheld to pay their claims. The city council, after hearing both sides, adopted a resolution to withhold for the Beaumont Brick Company and the Land Brick Company, out of the sum due on final settlement, the amount of their respective claims, aggregating $2,086.49, subject to the result of litigation between Masterson and said parties, and, said amount being accordingly withheld, this suit resulted as between Masterson and the Beaumont Brick Company and other persons who are not parties to this appeal. The J. R. Land Brick Company was not a party at the time of the first trial. On said first trial, the court rendered judgment on an instructed verdict in favor of the Beaumont Brick Company, and that judgment was reversed for reasons stated in our opinion, heretofore referred to.

As will be seen by reference to our former decision, the jury found on the first trial that the claim of the Beaumont Brick Company against Masterson personally, and as partner in the firm of Downey & Co., was barred by the statute of limitation, and judgment was accordingly rendered that it take nothing against him in his individual capacity by said suit. In reversing the former judgment, we say: "The effect of the judgment is to deny to Masterson a recovery of the fund which was withheld by the city in its final settlement with him. Whether this is correct depends on whether the funds so withheld accrued before or after the date of the contract made by Masterson with the

city. On this point, the evidence is rather unsatisfactory, but rather leads to the conclusion that the funds withheld accrued after the Masterson contract was signed. If it is a fact that this fund accrued while Downey & Co. were performing the work under the first contract, then the judgment is undoubtedly correct; but if subsequently to the time that Masterson assumed the contracts of Downey & Co. and executed a new contract with the city, then the funds accruing belonged to Masterson individually, and, plaintiff's claim against him being barred by the statute of limitation, his right of recovery, in such case, is undoubted." The correctness of our former opinion is neither attacked nor questioned on this appeal. It will be thus seen that the only issues left to be determined on the second trial was whether the funds withheld were earned by Downey & Co., under their contract, prior to October 3, 1903, or by Masterson subsequently to that date, after he took over Downey & Co.'s contract.

The case was tried by the court, without a jury, and resulted in a judgment for Masterson for the sum of $2,086.49, being the amount withheld by the city, and from this judgment the city of Beaumont has appealed.

[1] Appellant by its first assignment of error contends that the judgment is erroneous, for the reason that the undisputed evidence shows that on final settlement with Masterson, on January 22, 1904, the city of Beaumont still owed H. W. Downey & Co., for work done previous to the assignment of the contract to Masterson, something near $7,000, and that therefore the city had the right, under its contract with said Downey & Co., to reserve on final settlement, and pay the amount of the claims of the Beaumont Brick Company and the J. R. Land Brick Company. If it is true, as appellant contends, that the undisputed evidence shows that at the date of final settlement the city owed Downey & Co. for work performed under the contract prior to the assignment to Masterson on October 3, 1903, then the judgment of the court below should have been in favor of the city. But the undisputed evidence does not show. There is evidence in the record that might have warranted the court in so holding; but, before we would be authorized to disturb the judgment, we must be able to say that the evidence required the rendition of a different judgment from that which was rendered. In order to render the judgment appealed from, the trial judge must have necessarily found from the evidence that the funds reserved by the city were earned by Masterson subsequently to the assignment of the contract to him on October 2, 1903. This finding, if reasonably supported by the evidence, is conclusive upon the appellate courts. White v. Powell, 38 Tex. Civ. App. 38, 84 S. W. 836; Jordan v. Brophy, 41 Tex. 284; Association v. Brewster, 51 Tex. 263.

[2] The only question for our consideration is, Does it appear from the record that the evidence before the court did not warrant the judgment? Unless we can say that it is without evidence to support it, we cannot interfere with it. This, after a careful examination of the record, we are unable to say.

H. Masterson testified as follows: "There was $59,690.17 total paving contract done by H. W. Downey & Co. for the city of Beaumont up to October 2, 1903, and by H. Masterson under his contract with the city of Beaumont up to the final conclusion of the work. Of that $59,690.17, H. W. Downey & Co. were paid $23,683.82, being the full amount of their work done, and H. Masterson was paid $11,551.35 for work first done by him; and on final settlement with H. Masterson by the city it was treated, both by the city and H. Masterson, in reaching the balance due H. Masterson of $24,455, that the entire amount earned by Downey & Co. had been paid, and that $11,551.35 that Masterson earned has been paid, leaving the balance due Masterson for services rendered by him of $24,455, which amount was settled with him by issuing voucher No. 78 for $22,368.51, and by the retention by the city of Beaumont, out of money due him for work under his contract, of $2,086.49, the money now in controversy, and no part of that $2,086.49 was due to Downey & Co., nor considered due to Downey & Co. by the city council or by H. Masterson, because, in reaching this balance due H. Masterson, the whole amount earned by Downey & Co. had been paid in full."

He further testified: "At the date of my final settlement with the city, the city did not owe H. W. Downey & Co. a cent. The whole amount of that had long since been paid. In that final settlement, there was a certain $2,086.49 retained. * * * It was retained out of the estimate shown to be due me. There was thirty-six thousand and some odd dollars shown to be due me by the city of Beaumont, under the estimates of the city engineer, for work done by me on pavement account after the transfer of Downey & Co.'s contract to me on October 3, 1903. * * * That was all for work that I had done individually since the transfer of the contract to me on October 3, 1903. * * * I never did consent or agree that there was any money belonging to H. W. Downey & Co. I claimed it belonged to me, and H. W. Downey & Co. had nothing to do with it. I had earned $36,000 since the contract came to me, and they had paid me approximately $11,000, and owed me for work that I had done a balance of $24,455, and they paid me by giving me a certificate for $22,368.51, and retaining $2,086.49 of my money."

W. A. Smith testified: "I am familiar with the vouchers, payments, and estimates made by the city of Beaumont on this work with H. W. Downey & Co. and H. Masterson. I am thoroughly familiar with the whole matter from its beginning up to date. I have checked it numerous times in the city council and in our own office, and was here during the time of construction, and I have checked it until I almost know the transaction from memory. I audited the books of H. W. Downey & Co. in connection with the city engineer, checking up the various estimates on each month. * * *"

In speaking of the monthly statements, the witness said: "I have checked them over. I have checked them by our accounts, and know they are absolutely correct. I have examined the secretary's books of the city of Beaumont; that is, pertaining to this transaction. Those books show that H. W. Downey & Co. earned, during the life of their contract on paving account with the city of Beaumont, up to the 2d of October, 1903, when they sold to H. Masterson, $23,683.82. Q. Now state to the court whether or not the entire amount earned, including the 15 per cent. cut back by H. W. Downey & Co., was paid to him, or his order, prior to the final settlement with H. Masterson? A. It was. As to how I know that, I have handled all the vouchers when they were issued to H. W. Downey & Co., and kept accurate account of them, and know the dates they were issued, and for what account they were issued, and I know the amounts that were paid and the day of payment. * * * The full amount earned by H. W. Downey & Co. was paid to H. W. Downey & Co., or their order, by the city of Beaumont on or prior to December 2, 1903. * * * After December 2, 1903, H. W. Downey & Co. had nothing of the cut back, or anything else, coming to them; they had been paid in full at that date. * * * On September 1st, warrant No. 78 was issued for $6,120.84; October 7th, warrant No. 66 for $10,616.22. On November 9th, warrant No. 70 for $6,937.16 was issued. These three warrants aggregate $23,674.22. On December 2d, warrant No. 71 was issued for $3,666.60, of which it required $9.60 to eliminate the $23,683.82 earned by H. W. Downey Co. * * * Q. Now, do you know whether or not those vouchers were paid in numerical order that were issued by the city of Beaumont to H. W. Downey & Co. for work done and performed under the paving contract? A. I do know they were paid in their numerical order. As to how I know that, we collected them through your [H. Masterson's] office, and I was in charge of your office in those days, and I know. * * * Q. State whether or not the vouchers issued, aggregating $23,683.82, earned by H. W. Downey & Co., were paid prior to the final settlement by the city of Beaumont with H. Masterson? A. Yes, sir; they were. I know that. As stated in the last answer, the vouchers were collected through your [H. Masterson's] office, and I had charge of your office in the collecting de-

partment." This evidence warranted the conclusion that must have been reached by the court that the money reserved by the city was a portion of that earned by and due to H. Masterson. The assignment is overruled.

[3, 4] It appears that when the former judgment was rendered in the trial court in favor of the Beaumont Brick Company and against Downey & Co., Masterson, and the city of Beaumont, the city did not appeal, and that Downey & Co. and Masterson appealed only on a cost bond, and that the judgment against the city was not suspended pending the appeal. Pending that appeal, the Beaumont Brick Company applied for a writ of mandamus to compel the city to pay said judgment, and, the writ having been granted and proper judgment having been entered, requiring payment, the city paid off and discharged the judgment of the Brick Company. When the present case was called for trial, the court, on motion of the appellee, dismissed the Beaumont Brick Company from the suit; it having been shown that its judgment was paid in full, and that it no longer had any interest in the result of the litigation. The action of the court in dismissing the Brick Company from the suit is complained of in an assignment of error urged by appellant. No exception was taken to this action of the court by the Brick Company, and it is not a party to this appeal. We think the assignment does not point out reversible error. The city of Beaumont having failed to appeal from the judgment against it by the Brick Company, and to thereby suspend the execution of the judgment pending the appeal, as it might have done, cannot complain on this appeal of its proper enforcement; and the mere fact that it has paid the amount of the judgment in favor of the Brick Company does not entitle it to a credit or set-off against Masterson's claim, if, in fact, it owed Masterson, and not the Brick Company.

[5] Before the last trial in the court below, Mrs. Maud Land, survivor in community of the estate of John R. Land, intervened in the cause, setting forth that her deceased husband, under the name of J. R. Land Brick Company, sold to Downey & Co. brick, of the value of $1,248, which were used by Downey & Co. in the construction of work under said firm's contract. She alleged that the city in its final settlement for work withheld said sum, and that, by reason thereof, she sought judgment against the city for said amount. Appellee, Masterson, filed a motion to strike out the intervention, on the ground that the intervener was not a party to this cause at the former trial, and that, under the decision of the Court of Civil Appeals, the only issue to be determined was whether the sum of $2,086.49, retained by the city of Beaumont, was out of money that accrued subsequently to the date of tak-

ing over the contract by H. Masterson, and that, by reason thereof, the intervener was not properly joined in the suit. This motion was sustained by the court, and the intervention, dismissed. This action of the court is also assailed by appellant. Mrs. Land is not a party to this appeal, and it does not appear that she excepted to or otherwise complained of the court's action. We think the assignment raising the point discloses no reversible error. No facts are pointed out in appellant's brief to show that any liability upon the part of the city to pay Mrs. Land's claim exists; and it further appears to be barred by limitation. If the ruling of the court was error, it was one that affected Mrs. Land only, and, as she does not complain, the city cannot.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.